UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALARIC-LORENZO KISOB, et al., | Case No.: 2:25-cv-00327-APG-DJA |
| Plaintiffs | **Order Granting Wynn's Motion to Dismiss** |
| v. | [ECF No. 17] |
| WYNN LAS VEGAS, LLC, | |
| Defendant | |

On September 18, 2024, Sidney and Leopold Kisob took their cousin Frieda Kisob Banboye out to celebrate her visit to Las Vegas. ECF No. 12 at 3-4.  Alaric-Lorenzo Kisob "was going to be footing some of the bills" for their night out but did not attend. *Id.* at 3.  The group went to Red 8 and later the Parasol Bar at the Wynn hotel casino, where they put their name on the waitlist and were told it would be a 30-minute wait. *Id.* at 4.  During their wait, other "non-black" guests, including three white guests, "who arrived without [a] reservation were seated before [the Kisob family]." *Id.*  "After about 35 minutes," the Kisob family reminded the receptionist that they had been waiting and asked why others were being seated before them. *Id.* at 5.  The receptionist was initially confused but then sat the Kisob party, and a manager apologized to them. *Id.*

Alaric-Lorenzo, Sidney, Leopold, and Frieda (collectively the Kisobs) sued Wynn Las Vegas, LLC for claims arising out of their visit to the Parasol Bar.  They brought claims of race discrimination under (1) Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Title II), (2) 42 U.S.C. § 1981, and (3) Nevada Revised Statutes (NRS) § 651.070.  They also brought a claim against Wynn for negligent hiring, training, supervision, and/or retention.  Wynn moves to dismiss all the claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Wynn also moves to dismiss Alaric-Lorenzo's claims for lack of standing. I dismiss all the claims, with leave to amend.

I. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Kisobs do not request leave to amend if their claims are dismissed. However, Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires. Leave to amend should be granted unless there is a reason not to, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Generally, "dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) (quotation omitted).

**A. I dismiss the Kisobs' Title II public accommodation claim.**

The Kisobs allege that Wynn employees targeted them because of their race and denied them equal treatment in a place of public accommodation by refusing to seat them upon their

arrival at the Parasol Bar even though seats were available. Wynn argues that (1) the Kisobs have failed to exhaust their administrative remedies, (2) the Kisobs' right to full and equal use of the bar was not impaired, and (3) injunctive relief based on this claim is inappropriate because the Kisobs have not pleaded irreparable injury. The Kisobs respond that they have sufficiently pleaded a Title II claim by alleging they were treated less favorably in a place of public accommodation based on race.

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Title II applies to "[e]stablishments affecting interstate commerce," including "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises." *Id.* § 2000a(b). "To state an actionable discrimination claim under [§ 2000a], a plaintiff must allege that he or she: (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodations; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." *Dunn v. Albertsons*, No. 2:16-cv-02194-GMN-PAL, 2017 WL 3470573, at *3 (D. Nev. Aug. 10, 2017) (*citing United States v. Lansdowne Swim Club*, 894 F.2d 83, 88 (3d Cir. 1990)); *see also United States v. Baird*, 85 F.3d 450, 452 (9th Cir. 1996).

The Kisobs have not adequately alleged that their right to the full benefits and enjoyment of the Parasol Bar was impaired. They arrived, joined the waitlist, were told it would be a 30-minute wait, and ultimately waited 35 minutes before being seated. ECF No. 12 at 4-5. They do not allege that they were denied service, unable to order and enjoy their drinks, or asked to leave.

They admit that they "were ultimately seated" but argue that this does not shield Wynn from discriminatory conduct that occurred prior to their seating. ECF No. 21 at 4. However, their claim is based solely on "non-black patrons" being seated before them. ECF No. 12 at 4.

The fact that white patrons were seated before the Kisobs, by itself, does not create a Title II claim. *See Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 80-81 (E.D. La. 1994) (holding that the plaintiff failed to state a Title II claim based on having "to wait to be served, and that several white patrons were served before him" because the plaintiff "was not denied admittance" and was ultimately served). Both parties contend that *Feacher v. Intercontinental Hotels Group*, supports their position. 563 F. Supp. 2d 389 (N.D.N.Y. 2008). In *Feacher*, the court analyzed several separate claims of alleged racial discrimination. The first occurred when a black couple attempted to dine in a hotel restaurant but were denied entry and told, "we're closed for you," even though two white couples were allowed to enter. *Id.* at 397. The court held that these circumstances gave rise to an inference of race discrimination under Title II. *Id.* at 403. The second event occurred the next morning when the plaintiffs joined the restaurant for breakfast. The hostess asked the plaintiffs, "what do you people want here," and when the plaintiffs responded that they would like to be seated, they were seated in the back of the restaurant even though closer tables were open. *Id.* at 398. This claim was dismissed because the plaintiffs were not denied entry, "were served the food they ordered, and paid for their meals without incident." *Id.* at 398, 404. In the present case, because they were not denied entry or service at the Parasol Bar, the Kisobs' allegations are more like the second *Feacher* event than the first. The Kisobs' allegations are arguably less egregious than the second event (the breakfast interaction) in *Feacher* because the Kisobs did not face any discriminatory comments from the hostess. They did have to wait for a table but were told they would have to wait 30

minutes when they joined the waitlist, and they waited about 35 minutes. The Kisobs' allegations do not plausibly state a Title II claim.

Because the Kisobs fail to state a Title II claim, I do not address Wynn's arguments about administrative exhaustion and injunctive relief. The Kisobs concede that they "were ultimately seated," so I am skeptical that they can remedy their Title II claim. ECF No. 21 at 4. Nevertheless, I grant them leave to amend if they can plead facts that support this claim. If they choose to amend, they should consider Wynn's other dismissal arguments when crafting their amended complaint.

**B. The Kisobs fail to state a claim under 42 U.S.C. § 1981.**

The Kisobs allege that Wynn's discriminatory conduct inhibited their ability to make and enforce a contract with Wynn under 42 U.S.C. § 1981. Wynn argues that this claim must be dismissed because the Kisobs were not denied the ability to contract with Wynn and there are no allegations that give rise to an inference of racial discrimination. The Kisobs counter that their 35-minute wait was racially motivated and, because they were denied the same level of service as white patrons, Wynn inhibited their ability to contract.

Section 1981 prohibits race-based discrimination with respect to the "benefits, privileges, terms, and conditions of [a] contractual relationship." 42 U.S.C. §§ 1981(a)-(b). A plaintiff asserting a § 1981 claim "must initially identify an impaired contractual relationship under which the plaintiff has rights" and must plausibly allege that the defendant impaired that relationship because of intentional discrimination. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (simplified). Further, "a plaintiff must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

To establish a prima facie case of racial discrimination in non-employment contracts, the Kisobs must allege that they (1) are members of a protected class, (2) "attempted to contract for certain services," and (3) were "denied the right to contract for those services." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). The Ninth Circuit has also applied a fourth element, that "such services remained available to similarly-situated individuals" not in the Kisobs' protected class, without deciding whether this element is required in non-employment cases.[1] *See id.* (noting that the Seventh and Sixth Circuits disagree on the fourth element). To establish the third element of a § 1981 claim, the Kisobs must plead facts suggesting that the discrimination resulted in an "actual loss of a contract interest." *Jeffrey v. Home Depot U.S.A., Inc.*, 90 F. Supp. 2d 1066, 1069 (S.D. Cal. 2000); *see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 471 (8th Cir. 2009); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001); *Garrett v. Tandy Corp.*, 295 F.3d 94, 102 (1st Cir. 2002).

Courts have declined to find § 1981 violations in the service and retail context where plaintiffs were "denied neither admittance nor service, nor were they asked to leave." *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996); *see also Harrison v. Denny's Rest., Inc.*, No. 96-cv-0343-PJH, 1997 WL 227963, at *4 (N.D. Cal. Apr. 24, 1997) (stating that the "plaintiff has not shown that Denny's denied him service" because he admitted that he placed his order, "received his meal in a normal amount of time, and . . . was satisfied with his meal"); *Robertson*, 848 F. Supp. at 81 (The "plaintiff was not denied admittance or service—his service was merely slow."); *Stearnes v. Baur's Opera House, Inc.*, 788 F. Supp. 375, 378 (C.D. Ill. 1992) (The "[p]laintiff has not provided any evidence that the manager refused Plaintiff *admittance* to the bar or *service* while he was there.") (emphasis in original).

---

[1] Ultimately, my ruling does not turn on application of this element.

6

The Kisobs do not plausibly allege that they were denied the right to contract for any services with Wynn. They were able to join the bar's waitlist, were told how long the wait would be, and ended up waiting about that length of time before being seated. ECF No. 12 at 4-5. They do not allege that their order was refused, that they were not served, or that they were asked to leave. The Kisobs allege that "they were denied the opportunity to be seated on time," but the 5-minute difference between when they were told they would be seated and when they were ultimately seated is insufficient to state a § 1981 claim. *Id.* at 10; *see Harrison*, 1997 WL 227963, at *4 ("[S]low service does not rise to a level of violating one's civil rights."). The Kisobs were not denied the ability to contract with Wynn to drink at the Parasol Bar.

Wynn also argues that there are no allegations giving rise to an inference of intentional discrimination.[2] ECF No. 17 at 10-12. While the Kisobs fail to plead direct racial animus, "[e]vidence that a similarly situated individual outside of the plaintiff[s'] protected class received more favorable treatment than the plaintiff[s] can raise an inference of intentional discrimination." *Hameen v. Dollar Tree Stores Inc.*, No. CV-22-00751-PHX-JJT, 2022 WL 17416768, at *3 (D. Ariz. Dec. 5, 2022). The plaintiffs "must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Id.* (quotation omitted). Here, the Kisobs allege that "[a] party of 3 [w]hite people were seated before [p]laintiffs even though they arrived after [p]laintiffs." ECF No. 12 at 10. Taken as true, this allegation sufficiently alleges that the Kisobs and three white people were similarly situated, thus allowing for a reasonable inference that the Kisobs were treated differently because of race.

---

[2] I address this argument in case the Kisobs amend this claim and Wynn files another motion to dismiss.

Like their Title II claim, it does not appear that the Kisobs can remedy their § 1981 claim because they concede they were ultimately admitted and seated at the bar. Out of an abundance of caution, I grant the Kisobs leave to amend this claim if they can plead facts to do so.

### C. I dismiss the Kisobs' state public accommodation claim.

Wynn moves to dismiss the Kisobs' NRS § 651.070 claim for the same reasons that their Title II claim fails. The Kisobs do not dispute that NRS § 651.070 "mirrors federal public accommodation protections." ECF No. 21 at 5. Therefore, I dismiss this claim with leave to amend for the same reasons I dismissed the Title II claim.

Even if this claim could survive a motion to dismiss, I would not choose to exercise subject matter jurisdiction over it if the Kisobs cannot otherwise establish federal subject matter jurisdiction. Jurisdiction over this state law claim is based on supplemental jurisdiction, as the Kisobs allege it arises from the same case or controversy as their federal claims. ECF No. 12 at 3; 28 U.S.C. § 1367. If the Kisobs fail to state an actionable federal claim after amending, I will not exercise supplemental jurisdiction over their state law claim. 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction"); *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("The statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it."). If the Kisobs amend their federal claims, they may reallege this claim as well.

### D. The Kisobs fail to allege how Wynn was negligent in hiring, training, supervising, and/or retaining its employees.

The Kisobs allege that Wynn was negligent in hiring and retaining employees who have a racial bias and who discriminated against them. Wynn argues that this claim must be dismissed

8

because intentional and negligent acts are mutually exclusive, so this negligence claim cannot be based on any allegations that Wynn employees intentionally discriminated against the Kisobs. The Kisobs respond that they can plead this claim in the alternative.

A claim for negligent hiring, training, supervision, and/or retention requires a plaintiff to allege that an employer breached its duty to ensure that "employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). The plaintiff must allege facts specifically indicating how the employer violated this duty, and "[t]he fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision." *Colquhoun v. BHC Montevista Hosp., Inc.*, No. 2:10-CV00144-RLH-PAL, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010).

The Kisobs fail to allege how Wynn was negligent. They claim "Wynn knew or should have known that employees were unfit or incompetent and that this unfitness or incompetence created a particular risk to others." ECF No. 12 at 11. However, the fact that Wynn's employees allegedly acted in a discriminatory manner, by itself, does not give rise to a plausible claim for negligent hiring, training, supervision, and/or retention. *Colquhoun*, 2010 WL 2346607, at *3. Other than conclusory allegations that Wynn was negligent, the Kisobs fail to plead facts about Wynn that give rise to a plausible negligence claim.

For the sake of any future motion to dismiss that Wynn may file if the Kisobs amend this claim, I address Wynn's argument that an employee's intentional conduct cannot form the basis of a negligence claim against the employer. I disagree with Wynn. Intentional and negligent acts may be mutually exclusive with regard to one tortfeasor. *See Allen v. Clark Cnty. Det. Ctr.*, No. 2:10-CV-00857-RLH-GWF, 2012 WL 395646, at *2-3 (D. Nev. Feb. 7, 2012). But courts have upheld negligent hiring, training, supervision, and/or retention claims against employers for

an employee's intentional acts. *See Foradori v. Harris*, 523 F.3d 477, 491-92 (5th Cir. 2008) (affirming the district court's denial of defendant employer's motion for judgment as a matter of law on negligent supervision and training claim based on assault committed by an employee).

Although Wynn's argument is not persuasive, I dismiss this claim because the Kisobs fail to plead any facts that allow for a reasonable inference that Wynn acted negligently. Even if properly pleaded, I would decline to exercise supplemental jurisdiction over this state law claim if the Kisobs cannot state a claim establishing a basis for federal subject matter jurisdiction. I grant the Kisobs leave to amend this claim if they can plead facts to do so.

### E. I dismiss plaintiff Alaric-Lorenzo for lack of standing.

The Kisobs allege that Alaric-Lorenzo, although not present at the Parasol Bar that evening, has standing to sue because he helped plan the night out "and was going to be footing some of the bills." ECF No. 12 at 3. Wynn asserts that he lacks standing because (1) he was not present for the events at issue, and (2) his ability to contract was not inhibited because he does not allege that he paid for the expenses that night or otherwise attempted to contract with Wynn.[3] The Kisobs argue that Alaric-Lorenzo's interests fall within the "zone of interests" protected by Title II and § 1981. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014).

---

[3] Wynn also argues that Alaric-Lorenzo is engaged in the unauthorized practice of law, and moved for sanctions under Rule 11. ECF Nos. 15; 17 at 19-20. The Kisobs opposed Wynn's motion for sanctions. ECF No. 20. Magistrate Judge Albregts denied Wynn's sanctions motion without prejudice but warned Alaric-Lorenzo against the unauthorized practice of law and "ghostwriting" pleadings as the case proceeds. ECF Nos. 42; 43 at 30-31. My ruling on Alaric-Lorenzo's standing is not based on his status as a New York and California licensed attorney. Without casting aspersions on either party's position, I join Judge Albregts in cautioning Alaric-Lorenzo of unauthorized lawyering now that he has been dismissed from the case.

In their opposition to Wynn's motion to dismiss, the Kisobs allege for the first time that Alaric-Lorenzo incurred expenses from the Kisob family's night out. ECF No. 21 at 5. They do not say what these expenses were. Without more, the Kisobs fail to sufficiently allege how Alaric-Lorenzo suffered an injury to warrant standing. Even if he paid back his family for their drinks and other expenses that night, this would be insufficient because he needs to plead that he contracted with the Wynn. *See White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, 947 F.3d 301, 307-08 (5th Cir. 2020); *Runyon v. McCrary*, 427 U.S. 160, 172-73 (1976). He was not present for the events, and the Kisobs do not allege that he made a reservation, paid the Wynn for any part of the evening, or otherwise attempted to contract with the Wynn that evening.

The cases the Kisobs cite do not provide support for Alaric-Lorenzo's standing. In *White Glove Staffing*, the plaintiff, a temporary staffing agency, was contracting with the defendant hospital to provide kitchen staff. 947 F.3d at 303. The hospital's discrimination against a cook that the plaintiff sent to work caused the contract negotiations to fall apart. *Id.* at 304. Because the hospital's discrimination harmed its prospective contract to provide temporary kitchen staff, the staffing agency had standing under the zone of interests test. *Id.* at 307-08. And in *Runyon*, the plaintiff parents sought to enter a contractual relationship with certain schools, but the schools denied their children admission because of their race. 427 U.S. at 172-73. The parents had standing because their ability to contract with the school to pay for educational services for their children was impeded. *Id.* The staffing agency in *White Glove Staffing* and the parents in *Runyon* contracted (or attempted to contract) with the defendant in each case. The Kisobs fail to allege that Alaric-Lorenzo contracted, or attempted to contract, with the Wynn. It is immaterial whether he planned to, or did in fact, pay his family back.

The Kisobs concede that they did not have a reservation before arriving at the Parasol Bar, so I fail to see how they can amend to establish Alaric-Lorenzo's standing. ECF No. 12 at 4. But like their other claims, I grant leave to amend out of an abundance of caution.

## II. CONCLUSION

I THEREFORE ORDER that Wynn's motion to dismiss **(ECF No. 17) is GRANTED.**

I FURTHER ORDER that the Kisobs may file an amended complaint by December 5, 2025. I grant them leave to amend their First Amended Complaint (ECF No. 12) solely to remedy their existing claims or plead additional facts that establish Alaric-Lorenzo's standing. They may not assert any new claims unless they file a motion to do so. If the Kisobs do not amend by that date, the case will be closed.

DATED this 10th day of November, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

12